# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-4018

———————

Eugenio Cuadra,                                    *
                                                   *
        Petitioner,              *
                                                   *
    v.                                 *  Petition for Review of an Order
                                                   *  of the Board of Immigration Appeals.
Alberto Gonzales, Attorney General                 *
of the United States,                              *
                                                   *
        Respondent.              *

———————

Submitted: February 18, 2005
Filed: August 10, 2005

———————

Before BYE, HEANEY, and MELLOY, Circuit Judges.

———————

BYE, Circuit Judge.

Petitioner Eugenio Cuadra seeks review of the Board of Immigration Appeals's (BIA) interpretation of the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. 105-100, 111 Stat. 2160 (1997). Cuadra may be eligible for "special rule cancellation of removal" under NACARA if he can show, inter alia, continuous physical presence in the United States for a period of seven years immediately preceding his March 24, 2000, application for relief and good moral character during this period. The BIA held 8 U.S.C. § 1101(f)(6) bars Cuadra from establishing good moral character because he admittedly lied to an asylum

officer during an interview on May 23, 2001. Cuadra requests a full hearing on his good moral character because he believes his admittedly false testimony occurred *after* the relevant time period during which he must establish good moral character.

The BIA had jurisdiction to hear this case under 8 C.F.R. § 1003.1. This court has jurisdiction over the petition for review under 8 U.S.C. § 1252. We grant the petition and remand for further proceedings.

I.

Cuadra is a native and citizen of El Salvador who entered this country without inspection in November 1986 to escape civil war and poor conditions in his country. He works for Servpro of Fargo/Moorhead, is an active member of the Templo Cristiano Spanish Assembly of God Church, and has two United States citizen children. In 1988, Cuadra filed an application for asylum with the Immigration and Naturalization Service (INS). The INS interviewed him in June 1988, but it neither granted him asylum nor placed him in deportation proceedings.

Almost twelve years later on March 24, 2000, Cuadra filed an application for special rule cancellation of removal under NACARA § 203.[1] Cuadra was eligible for this form of relief by virtue of his membership in a class of thousands of Salvadorian and Guatemalan asylum seekers who filed a lawsuit against the INS claiming their asylum applications had not been fairly adjudicated. See Am. Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991). In settling this lawsuit, the INS agreed not to deport class members (commonly referred to as the ABC class), to give each class member a proper *de novo* asylum interview, and to give class members

---

[1]NACARA § 203 is an amendment to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and is now part of the "transitional rules" found at IIRIRA § 309(f)(1)(A). See 8 U.S.C. § 1101 note.

work authorization while they awaited these interviews. The INS, however, delayed implementation of the settlement for years, and what were once strong asylum claims became stale as conditions improved in El Salvador and Guatemala.

By the mid-1990s, many ABC class members accrued the requirements for suspension of deportation under 8 U.S.C. § 1254 (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) on September 30, 1996), which gave the Attorney General discretion to grant permanent resident status to an alien who had been in the United States for seven years, was of good moral character, and whose deportation would cause extreme hardship for the alien or certain lawfully present relatives. For many ABC class members, relief through suspension of deportation was a better alternative than their now-stale asylum claims.

As ABC class members began to apply for suspension of deportation, however, Congress passed IIRIRA, which replaced suspension of deportation with a much more restrictive form of immigration relief—cancellation of removal. <u>See</u> 8 U.S.C. § 1229b. To make relief easier for ABC class members, Congress passed NACARA, which allows ABC class members to seek relief under conditions approximating pre-IIRIRA suspension of deportation.

ABC class members who were placed in removal proceedings prior to IIRIRA's effective date are eligible for NACARA suspension of deportation; ABC class members who were not placed in deportation proceedings prior to IIRIRA's effective date (like Cuadra) are eligible for special rule cancellation of removal. NACARA's special rule cancellation of removal provision provides the Attorney General with discretion to "cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence" an alien who:

> (i) is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration

and Nationality Act and is not an alien described in section 241(b)(3)(B)(i) of such Act;

(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;

(iii) has been a person of good moral character during such period; and

(iv) establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

NACARA § 203.

When an alien applies for special rule cancellation of removal, his prior asylum application is adjudicated concurrently. To prepare for his asylum interview, Cuadra met with an individual named Tri Phan at Lutheran Social Services in Fargo. After this meeting, Cuadra mistakenly believed past persecution and fear of future persecution were requirements of both asylum *and* special rule cancellation of removal. Such information, of course, is not relevant to an application for special rule cancellation of removal.

Because Cuadra misunderstood the requirements for obtaining the immigration relief he sought, he admittedly lied to an asylum officer during an interview on May 23, 2001. He informed the asylum officer he had been a member of guerilla forces in El Salvador during the 1980s and claimed to have beaten, tortured, and mistreated soldiers, police, and guards during this time.

Cuadra's story had the opposite effect of what he had hoped: the asylum officer concluded Cuadra was ineligible for asylum because he appeared to have been a persecutor himself. See 8 U.S.C. § 1101(a)(42)(A) (stating the term "refugee" does

not include anyone who "participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion"). His application for asylum was accordingly denied, but his application for special rule cancellation of removal was referred to an immigration judge (IJ) pursuant to 8 C.F.R. § 1240.70(d), for a determination of whether Cuadra's role as a persecutor made him ineligible for such relief. See 8 U.S.C. § 1229b(c)(5).

On January 9, 2002, the INS initiated removal proceedings against Cuadra. He admitted the factual allegations in the Notice to Appear, conceded removability, and withdrew his application for asylum, but he renewed his application for special rule cancellation of removal. Cuadra conceded he gave false information to an asylum officer during his May 23, 2001, interview, which, in general, statutorily precludes an alien from establishing good moral character. 8 U.S.C. § 1101(f)(6) (stating that an alien cannot establish good moral character if he has given false testimony to obtain an immigration benefit "during the period for which good moral character is required to be established"). However, he argued such false testimony occurred *after* he filed his application for special rule cancellation of removal, not during the seven-year period immediately preceding the filing, and § 1101(f)(6) therefore did not preclude him from establishing good moral character.

The IJ determined Cuadra's post-application conduct was relevant because an application for special rule cancellation of removal is a "continuing" application. Thus, 8 U.S.C. § 1101(f)(6) statutorily precluded him from establishing good moral character because he lied to an asylum officer "during the period for which good moral character is required to be established." The BIA affirmed the IJ's decision on the same grounds. Cuadra filed a timely petition for review with this court, arguing he is entitled to a full hearing on the issue of his good moral character because his post-application conduct falls outside the relevant time period for § 1101(f)(6)'s statutory bar.

II.

We review the BIA's legal determinations *de novo*, giving substantial deference to the BIA's interpretation of the statutes and regulations it administers. Negele v. Ashcroft, 368 F.3d 981, 982 (8th Cir. 2004). We do not defer, however, to legal interpretations that are contrary to unambiguous statutory language. Patel v. Ashcroft, 375 F.3d 693, 696 (8th Cir. 2004); see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984) (stating if Congress has spoken to the question at issue, we "must give effect to the unambiguously expressed intent of Congress").

8 U.S.C. § 1101(f)(6) states that an alien who "give[s] false testimony for the purpose of obtaining any [immigration] benefits" and does so "during the period for which good moral character is required to be established" is statutorily precluded from establishing good moral character. Thus, the question for our review is what is the relevant period for which moral character is required to be established for special rule cancellation of removal.

The relevant NACARA provision states the Attorney General has discretion to "cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence" an alien who, among other things:

> (ii) *has been* physically present in the United States for a continuous period of not less than 7 years *immediately preceding the date of such application*; and

> (iii) *has been* a person of good moral character *during such period*.

NACARA § 203 (emphasis added). The regulation implementing this statute directly tracks the statutory language, stating that the alien must establish that he "has been

-6-

physically present in the United States for a continuous period of 7 years *immediately preceding the date the application was filed*," and that he "*has been* a person of good moral character *during the required period of continuous physical presence*." 8 C.F.R. § 240.66(b) (emphasis added).

According to the plain language of the statute and regulation, an alien must show good moral character "during the required period of physical presence," 8 C.F.R. § 240.66(b), and the required period of physical presence is the seven years "immediately *preceding* the date of such application," NACARA § 203 (emphasis added). The statute and regulation thus make clear the relevant period of good moral character is *identical* to the "required period of continuous physical presence," 8 C.F.R. § 240.66(b), and the required period of physical presence ends on the date the application "was filed," NACARA § 203. We give effect to the statute's unambiguous language without deferring to the BIA's interpretation. Chevron, 467 U.S. at 843-45; INS v. Cardoza-Fonseca, 480 U.S. 421, 445-49 (1987).

The plain and unambiguous meaning of the statute and regulation finds support in a comparison of these provisions with those governing NACARA suspension of deportation. The regulation implementing NACARA suspension of deportation proceedings provides, in relevant part, that an alien must show he "has been physically present in the United States for a continuous period of not less than 7 years *immediately preceding the date the application was filed*," and "*[d]uring all of such period* the alien *was and is* a person of good moral character." 8 C.F.R. § 240.65 (emphasis added). This language directly tracks the language from pre-IIRIRA suspension of deportation, which gave the Attorney General discretion to grant permanent resident status to an alien who, among other things, "has been physically present in the United States for a continuous period of not less than seven years *immediately preceding the date of such application*, and proves that *during all of such period* the alien *was and is* a person of good moral character." 8 U.S.C. § 1254 (repealed by IIRIRA on September 30, 1996) (emphasis added).

-7-

In contrast, special rule cancellation of removal tracks the current statutory language regarding cancellation of removal under 8 U.S.C. § 1229b. The relevant portion of § 1229b gives the Attorney General discretion to grant permanent resident status to an alien who can show, among other things, that he, "has been physically present in the United States for a continuous period of not less than 10 years *immediately preceding the date of such application*," and "*has been* a person of good moral character *during such period*." 8 U.S.C. § 1229b(b)(1) (emphasis added).

A comparison of these forms of relief highlights the obvious difference between the statutory phrase in the suspension of deportation statute: "was and is," and the statutory phrase in the cancellation of removal statute: "has been." Congress and the INS knew how to expand the required period of good moral character beyond the period immediately preceding the date of application by using the expansive language "was and is" rather than the past tense "has been." Congress did not choose to expand the period of good moral character in the special rule cancellation of removal statute.

Cuadra filed his application for special rule cancellation of removal on March 24, 2000. Therefore, the relevant period during which he must show good moral character is the seven-year period immediately preceding such date—from March 24, 1993, through March 24, 2000. Cuadra's false statement to the asylum officer on May 23, 2001, is outside the relevant time period "during . . . which good moral character is required to be established" as set forth by the controlling statute and regulation. 8 U.S.C. § 1101(f)(6). Thus, the IJ and BIA incorrectly determined Cuadra's post-application conduct made him statutorily ineligible for special rule

cancellation of removal.[2] Cuadra is entitled to a full hearing in which he can present evidence of his good moral character.

## III.

For the reasons provided above, we grant the petition for review and remand to the BIA for further proceedings.

MELLOY, Circuit Judge, dissenting.

I respectfully dissent. The majority holds that the relevant statutory language is unambiguous, and thus the BIA's interpretation is not entitled to deference. I do not agree that the statutory language relevant to this case is unambiguous. "Ambiguity is a creature not of definitional possibilities but of statutory context. Brown v. Gardner, 513 U.S. 115, 118 (1994). That is, "the meaning of statutory language, plain or not, depends on context." Id. Here, that context includes the prior suspension of deportation statute that permitted the Attorney General to suspend deportation for an applicant who "was and is a person of good moral character." Immigration and Nationality Act of 1952, Section 244(a), codified as 8 U.S.C. 1254(a) (1994); see, e.g., Chanmouny v. Ashcroft, 376 F.3d 810, 811 n.1 (8th Cir. 2004) (discussing the change in available relief from suspension of deportation to cancellation of removal caused by the IIRIRA). Further, as with any applicant for government benefits, we expect applicants for immigration benefits to be honest in their dealings with the government. See, e.g., 18 U.S.C. 1001 (prohibiting a person from "knowingly and willfully . . . [making] any materially false . . . statement . . .").

---

[2]The IJ and BIA relied upon INS decisions which held applications were "continuing." Matter of Castro, 19 I. & N. Dec. 692 (BIA 1988); Matter of Alarcon, 20 I. & N. Dec. 557 (BIA 1992). To the extent these administrative decisions apply to Cuadra's situation, we find them clearly contrary to the plain meaning of the statute and therefore disregard them.

Given the emphasis on honesty and good moral character within all of the pertinent statutes, it is unlikely that an applicant's behavior simply does not matter during the period between the filing of his or her application and the adjudication of his or her claim. Viewed in this context, I believe the relevant statutory language is sufficiently ambiguous that we should extend deference to the executive agency's interpretation. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984) (holding that courts should give substantial deference to administrative agency's construction of an ambiguous statute). I would affirm the decision of the BIA.

_____