In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3851

JOSE DURON-ORTIZ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A076-202-970

ARGUED SEPTEMBER 5, 2012—DECIDED OCTOBER 15, 2012

Before BAUER, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* After a long history of arrests for drunken driving and other offenses, Jose Duron-Ortiz, a native and citizen of Mexico who entered the United States illegally in 1989, was served a Notice to Appear by the Department of Homeland Security. He sought cancellation of removal, but the Immigration Judge denied his application on the grounds that, because Duron-Ortiz had served over 300 days for two recent

drunken driving arrests, he could not satisfy the good moral character requirement of the Immigration and Nationality Act for cancellation of removal. Duron-Ortiz sought review by the Board of Immigration Appeals, but the Board affirmed the Immigration Judge's decision. Duron-Ortiz now appeals that decision and argues that we should reject the Board's interpretation of the removal statute in *Matter of Ortega-Cabrera*, 23 I. & N. Dec. 793 (BIA 2005), and reverse the Immigration Judge's decision. For the reasons set forth below, we defer to the Board's holding in *Ortega-Cabrera*, deny Duron-Ortiz's petition for review, and affirm the Board's decision.

## I. BACKGROUND

Jose Duron-Ortiz, a native and citizen of Mexico, illegally entered the United States in 1989. His first arrest, for possession of stolen property, occurred in April 1996. He was then arrested for driving under the influence ("DUI") in December 1998, February 1999, and March 2000. In October 2001, he was again arrested, this time for DUI and speeding. He was arrested for DUI, driving on a suspended or revoked license, obstructing justice, and various other charges in June 2003. His most recent arrest occurred in November 2008, when he was arrested on two counts of DUI, driving on a suspended or revoked license, and other charges.

The Department of Homeland Security ("DHS") finally served Duron-Ortiz with a Notice to Appear ("NTA") on January 22, 2009, thus placing Duron-Ortiz in removal proceedings. He was charged with removability under

8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. On March 12, 2009, Duron-Ortiz appeared with counsel before an Immigration Judge ("IJ") and declared his intent to file an application for cancellation of removal. He also admitted four of the five factual allegations concerning his prior arrests in the NTA and conceded the charge of removability.

At the next hearing, on April 7, 2009, Duron-Ortiz submitted his cancellation application and the IJ continued the proceedings to allow Duron-Ortiz to resolve his pending criminal charges. Duron-Ortiz's removal proceedings were continued five more times over the next six months due to his criminal charges and other procedural issues. On October 27, 2009, the IJ administratively closed the case because Duron-Ortiz was serving a 24-month sentence for his two most recent aggravated DUI arrests.

Duron-Ortiz was released from state custody on August 18, 2010, after serving approximately ten months of his sentence. Thereupon the IJ reopened the removal proceedings, and a hearing was held on September 21, 2010. During the hearing, the IJ explained that Duron-Ortiz was probably not eligible for cancellation of removal due to the duration of his recent incarceration. The IJ also questioned whether Duron-Ortiz would be eligible for voluntary departure, and then continued the proceedings so that Duron-Ortiz's counsel could submit a brief in support of his eligibility for cancellation of removal. The IJ also scheduled a hearing for November 29, 2010.

Duron-Ortiz's brief was submitted two days late, on October 20, 2010. On November 24, 2010—five days prior to the hearing scheduled for November 29—the IJ issued a written decision pretermitting Duron-Ortiz's application for removal and ordering him removed to Mexico. The IJ found that Duron-Ortiz's recent incarceration for ten months prevented him from showing the good moral character necessary to satisfy the statutory elements for cancellation of removal. Specifically, the IJ relied upon *Matter of Ortega-Cabrera*, 23 I & N. Dec. 793 (BIA 2005), where the Board ruled that the time period for establishing good moral character is the ten years immediately preceding the final administrative decision. *Id.* at 797. Since the removal statute states that no person who has served 180 days or more in the preceding ten years can possess good moral character, and since Duron-Ortiz had served over 300 days for his aggravated DUI convictions between 2009 and 2010, the IJ found that Duron-Ortiz could not satisfy the requirements of the statute and denied his application for cancellation of removal. The IJ also noted that Duron-Ortiz had not applied for voluntary departure, but due to the time Duron-Ortiz served in prison, the IJ found that he would not be eligible for post-conclusion voluntary departure anyway.

Duron-Ortiz appealed the IJ's decision to the Board, where he argued that *Matter of Ortega-Cabrera* was wrongly decided and that the IJ erred by not providing him with an opportunity to apply for voluntary departure. The Board dismissed the appeal in November 2011, ruling that the IJ correctly found Duron-Ortiz ineligible for cancellation of removal. The Board declined to revisit

its holding in *Ortega-Cabrera*, and also ruled that the IJ did not err when the IJ issued a written decision denying Duron-Ortiz's application prior to the scheduled hearing. Duron-Ortiz now appeals the Board's decision. He urges us to reject the Board's interpretation of the removal statute in *Ortega-Cabrera* and reverse the IJ's ruling. Duron-Ortiz also contends that the IJ erred when the IJ issued a written decision denying Duron-Ortiz's cancellation application before he could seek pre-conclusion voluntary removal. We address each argument in turn.

## II. DISCUSSION

### A. We defer to the Board's decision in *Ortega-Cabrera* and therefore Duron-Ortiz cannot satisfy the good moral character requirement for cancellation of removal.

We review questions of law and due process claims de novo. *Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 443 (7th Cir. 2007). Duron-Ortiz challenges the Board's interpretation of part of the Immigration and Nationality Act ("INA") in *Matter of Ortega-Cabrera*, thus raising a legal question. *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009). While our review of legal questions is de novo, we "owe the Board deference in its interpretation of the INA." *Gattem v. Gonzales*, 412 F.3d 758, 763 (7th Cir. 2005) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999)). Where the decision of the Board relies on the decision of the IJ, we review the decision of the IJ as supplemented by the Board. *Terezov v. Gonzales*, 480 F.3d 558, 560 (7th Cir. 2007).

Under the INA, the Attorney General may cancel the removal proceedings and adjust the status of an alien if the alien:

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The statute defines "good moral character" in the negative, stating, *inter alia*, that anyone who has been confined in a penal institution for an aggregate of 180 days or more during the ten-year period cannot satisfy the good moral character standard. *Id.* at § 1101(f)(7). The statute also contains a "stop-time" rule, however, which states that any period of continuous presence in the United States ends "when the alien is served a notice to appear." *Id.* at § 1229b(d)(1).[1]

---

[1] The stop-time provision was added to the INA with the passage of the Illegal Immigration Reform and Immigrant

(continued...)

Duron-Ortiz's appeal centers on his challenge to the Board's decision in *Ortega-Cabrera*, which found that the cancellation of removal statute—8 U.S.C. § 1229b(b)(1)—is ambiguous with regard to when the ten-year period for establishing continuous physical presence and good moral character terminates. The Board held that the period for establishing both terminates when the IJ or Board issues a final administrative decision. *See Ortega-Cabrera*, 23 I. & N. Dec. at 797-98. Duron-Ortiz argues that the statute is not ambiguous and urges us to read the statute in such a way that the ten-year period to establish continuous physical presence and good moral character cuts off when an alien is served an NTA. We are not persuaded by Duron-Ortiz's arguments, and defer to the Board's decision in *Ortega-Cabrera*.

The interplay of the statutory language is, as the Board found in *Ortega-Cabrera*, ambiguous. Under the statute, an individual who applies for cancellation of removal must show that he has "been a person of good moral character during *such period*", where "such period" refers to the ten years of physical presence pre-

---

(...continued)

Responsibility Act of 1996 ("IIRIRA"). Prior to the Act's passage, the "continuous physical presence" requirement and consequently the "good moral character" period were treated as continuing to accrue until the Board rendered a final administrative decision on an alien's appeal. *See Ortega-Cabrera*, 23 I. & N. Dec. at 794 (citing *Matter of Castro*, 19 I. & N. Dec. 692 (BIA 1988)).

ceding the date of the cancellation application. *See* 8 U.S.C. § 1229b(B)(1)(A)-(B). The ambiguity arises when we read the statute in conjunction with the stop-time provision of § 1229b(d)(1), which renders the "date of [the] application" language superfluous when an NTA is served. Under the stop-time provision, the moment an NTA is served upon an alien, the ten-year period to determine continuous physical presence (and thus good moral character) is cut off, regardless of when the alien ultimately files an application for cancellation of removal.

As the Board noted, with the stop-time provision in play there are three possible ways to calculate the applicable "good moral character" period: (1) the ten-year period ending when the NTA is served; (2) the ten-year period ending when the alien files an application for cancellation of removal; or (3) the ten-year period ending when a final administrative decision on the application for cancellation of removal is rendered. *Ortega-Cabrera*, 23 I. & N. Dec. at 795. The Board rejected the first two approaches, reasoning that if either approach were used to calculate the ten-year period to establish good moral character, then "an alien who engages in a disqualifying act . . . *after* being served with the [NTA] or filing the initial application [for cancellation of removal], would theoretically be eligible for cancellation of removal . . . ." *Id.* at 797 (emphasis in original). Such a result, the Board noted, would be a "decidedly unlikely expression of congressional intent." *Id.* The Board then concluded that "the 10-year period during which good moral character must be established ends with the entry of a final administrative decision." *Id.* at 798.

In light of the possible ambiguity the stop-time provi-
sion adds to the removal statute, we find that the
Board's decision is reasonable, and so must defer to it.
Reading the statute in the manner Duron-Ortiz urges
would result in precisely the untenable situation the
Board sought to avoid—namely, an applicant could
commit a crime or otherwise engage in disqualifying
activity after being served with an NTA, yet remain
eligible for cancellation of removal. Such a result would
flaut the purpose of the INA. As the government cor-
rectly argues, allowing the good moral character require-
ment to continue until a final decision is reached by the
IJ or the Board comports with one of the most essential
considerations in deciding who is allowed to remain in
the United States—an individual's character.[2] It is only
logical that the agency consider an applicant's most
recent negative behavior when making such a decision,
as the more recent an individual's behavior is, the
more accurately it reflects his or her character.

Furthermore, the Board's decision returns to the
original way the statute was interpreted prior to
the ambiguity created by the stop-time provision of the
IIRIRA: the relevant period for determining good

---

[2] Duron-Ortiz asserts that it "would be inconsistent with the
purpose of the statute to find that an alien is precluded
from establishing good moral character if, while attempting
to clear up his record, he served time in a correctional institu-
tion in connection with an old arrest." We agree; but here
there is nothing "old" about Duron-Ortiz's arrests and subse-
quent 24-month sentence for multiple aggravated DUIs.

moral character for purposes of establishing eligibility for cancellation of removal includes the time during which the applicant is in removal proceedings up until the issuance of a final administrative decision on the cancellation application. *See Castro*, 19 I. & N. Dec. at 692-93. Additionally, the Board has already affirmed *Ortega-Cabrera* several times. *See, e.g.*, *Matter of Bautista Gomez*, 23 I. & N. Dec. 893, 894 (BIA 2006); *Matter of Garcia*, 24 I. & N. Dec. 179, 181 (BIA 2007).

Finally, we note that the Ninth Circuit implicitly adopted *Ortega-Cabrera* in *Castillo-Cruz v. Holder*, 581 F.3d 1154 (9th Cir. 2009). There, an alien's application for cancellation of removal was denied by the IJ and upheld by the Board on the grounds that he could not show good moral character, even though his prior conviction occurred outside the ten-year period immediately preceding the date on which the IJ adjudicated the alien's cancellation application. *Id.* at 1158. The Ninth Circuit, citing *Ortega-Cabrera*, found that the IJ erred because more than ten years had passed between the date of the alien's conviction and the date of the IJ's decision, and remanded the case to the Board. *Id.* at 1162.

Since we defer to *Ortega-Cabrera*, Duron-Ortiz's appeal fails. It is undisputed that he served over 300 days in state custody after he received the NTA but prior to the Board's final adjudication of his cancellation application. His duration in state custody far exceeds the 180-day limit imposed by the good moral character statute. *See* 8 U.S.C. § 1101(f)(7). Since Duron-Ortiz cannot satisfy the INA's requirements for cancellation of removal, the Board's decision stands.

### B. The IJ did not err when he denied Duron-Ortiz an opportunity to apply for voluntary removal.

Duron-Ortiz also argues that the IJ erred by not allowing him to apply for voluntary departure. His argument centers on the fact that, despite having scheduled a hearing for November 29, 2009, the IJ issued a written decision five days prior to the hearing pretermitting Duron-Ortiz's application, which effectively precluded Duron-Ortiz from applying for voluntary departure at the upcoming hearing. Duron-Ortiz insists that the IJ erred in doing so, despite the fact that Duron-Ortiz would not have qualified for post-conclusion voluntary departure due to his recent incarceration.

We have held that there is no protected liberty interest in discretionary relief from removal, *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012), and consequently Duron-Ortiz's due process rights here are limited to "notice and an opportunity for a fair hearing." *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010). Here, Duron-Ortiz's rights have been satisfied. At the first hearing, the IJ asked if Duron-Ortiz would seek relief from removal, to which his counsel replied that he would be seeking cancellation. Duron-Ortiz did not express any interest in seeking voluntary departure then, and never once broached the topic during the next five hearings. At the final hearing before the IJ issued his written decision, the IJ specifically discussed voluntary departure with Duron-Ortiz's counsel, and again Duron-Ortiz did not seek voluntary departure, but instead focused his brief on the good moral character issue.

With so many opportunities to seek voluntary departure yet failing to do so, the IJ's decision to issue a written decision prior to a final hearing did not violate Duron-Ortiz's rights. The IJ did not err when it issued its written decision five days prior to what would have been Duron-Ortiz's final hearing. Also, as the Board reasoned in its decision rejecting Duron-Ortiz's appeal, "it is unlikely that, after [Duron-Ortiz] was given an opportunity to fully, albeit unsuccessfully, litigate the good moral character issue before the Immigration Judge and the Board, the DHS would agree to permit [him] to withdraw his application for cancellation of removal and to stipulate to a grant of pre-conclusion voluntary departure." For these reasons, the IJ did not err, and the Board's decision is affirmed.

### III. Conclusion

For the foregoing reasons, we defer to the Board's holding in *Matter of Ortega-Cabrera*. Duron-Ortiz's appeal fails, and review of the Board's decision is DENIED.