**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE DARIO ARAGON-SALAZAR, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 10-71763 Agency No. A072-400-647 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 14, 2014—San Francisco, California

Filed October 2, 2014

Before: Consuelo M. Callahan and Milan D. Smith, Jr.,
Circuit Judges, and Edward R. Korman, Senior District
Judge.[*]

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Callahan

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Jorge Dario Aragon-Salazar's petition for review of the Board of Immigration Appeals' decision finding that he was statutorily ineligible for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act because he failed to establish good moral character during the requisite seven-year period.

As a matter of first impression, the panel held that an application for NACARA special rule cancellation is not a continuing application, and that the seven-year period during which good moral character is required under NACARA ends on the date of the filing of the application. The panel held that if Aragon gave false testimony, he did so after the seven-year period, and the panel accordingly granted his petition and remanded for further proceedings.

Dissenting, Judge Callahan would affirm the BIA's determination that Aragon lacks good moral character, and would deny his petition. Judge Callahan would find NACARA § 203 ambiguous, and further disagreed with the majority's holding that an applicant's responsibility to maintain good moral character vanishes upon the filing of an application for relief.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Bobby Glenn Bell, Jr. (argued), Oakland, California, for Petitioner.

David H. Wetmore (argued) and Matt A. Crapo, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

M. SMITH, Circuit Judge:

Jorge Dario Aragon-Salazar (Aragon), a native and citizen of Guatemala, petitions for review of a decision by the Board of Immigration Appeals (BIA), affirming the Immigration Judge's (IJ) denial of his application for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, 111 Stat. 2160, 2193–2201 (1997). The IJ and BIA denied Aragon's application on the ground that his false testimony prevented him from establishing good moral character during the seven-year period required by NACARA in order to be eligible for special rule cancellation of removal. As a matter of first impression in our circuit, we hold that an application for special rule cancellation of removal under NACARA is not a continuing application, and that the seven-year period during which good moral character is required under NACARA ends on the date of the filing of the application. In this case, if Aragon gave false testimony, he did so after the requisite seven-year period. Accordingly, we grant the petition for review, and remand for further proceedings.

## LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

### I.  Statutory Structure

Section 203 of NACARA establishes rules to permit certain classes of aliens, including some from Guatemala, to apply for relief from removal under what is titled "Special Rule for Cancellation of Removal." NACARA, Pub. L. No. 105-100, 111 Stat. 2160, 2193–2201 (NACARA § 203). In enacting NACARA, Congress relaxed the requirements of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, for cancellation of removal for such aliens by applying the less stringent pre-IIRIRA requirements. *See Barrios v. Holder*, 581 F.3d 849, 857 (9th Cir. 2009); *Munoz v. Ashcroft*, 339 F.3d 950, 955–56 (9th Cir. 2003).

Under § 309(f) of IIRIRA, as amended by NACARA § 203, the Attorney General has discretion to "cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence" an alien who, inter alia:

> (i) is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration and Nationality Act and is not an alien described in section 241(b)(3)(B)(i) of such Act;
>
> (ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;

(iii) has been a person of good moral character during such period; and

(iv) establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

IIRIRA § 309(f), *as amended by* NACARA § 203, *amended by* Pub. L. No. 105-139, 111 Stat. 2644, 2644–45 (1997).[1] No person "who has given false testimony for the purpose of obtaining any [immigration] benefits" during the relevant period for which good moral character is required shall be found to be a person of good moral character. 8 U.S.C. § 1101(f)(6).

If an application for NACARA special rule cancellation of removal was treated as a continuing application, an applicant would be required to show good moral character up to the point that a final administrative decision is issued in order to meet NACARA's requirement. *See In re Garcia*, 24 I. & N. Dec. 179, 183 (B.I.A. 2007). If, however, an application for NACARA special rule cancellation of removal is not a continuing application, then the seven-year good

---

[1] The incorporation of Immigration and Nationality Act (INA) § 241(b)(3)(B)(i), 8 U.S.C. § 1231(b)(3)(B)(i) into § 309 of IIRIRA bars any alien who "ordered, incited, assisted, or otherwise participated in the persecution of an individual because of that individual's race, religion, nationality, membership in a particular group, or political opinion" from obtaining special rule cancellation of removal. 8 U.S.C. § 1231(b)(3)(B)(I). This subsection is commonly referred to as the "persecutor bar."

moral character period requirement ends on the date the applicant files the application.

## II. Factual and Procedural History

Aragon is a native and citizen of Guatemala, who entered the United States without inspection in 1988. On June 13, 2006, Aragon filed an application for special rule cancellation of removal under NACARA. On September 13, 2006, Helen Maudeen Wauku, an asylum officer, interviewed Aragon. After the interview, the Department of Homeland Security (DHS) declined to grant Aragon's application because it appeared from Aragon's testimony that he was barred from relief as a person who ordered, incited, assisted or otherwise participated in the persecution of others under INA § 240A(c)(5), 8 U.S.C. § 1229b(c)(5). DHS instead referred Aragon's application to an IJ. Aragon subsequently submitted an updated NACARA application at the request of the IJ.

On January 7, 2009, Aragon testified about his role in the Guatemalan army from 1983 to 1988 and stated on direct examination that his army unit had arrested one guerrilla. On cross-examination, Aragon testified that his unit had arrested guerrillas on approximately two other occasions, but that he was not present during those arrests. Aragon denied that he stated during his NACARA interview with Wauku that every time his unit engaged in combat, it captured three to six guerillas.

On March 3, 2009, Wauku testified before the IJ about Aragon's NACARA interview. Reviewing the notes she took during the interview, she testified that Aragon stated during the interview that his unit had captured between three to six

guerrillas every six months. Wauku testified that she had concluded after the interview that Aragon had assisted a "persecutory army" because he drove troops to areas where "atrocious" conflicts had occurred, and was knowledgeable about catching guerrillas. She stated that she had therefore determined that he was ineligible for NACARA relief due to the persecutor bar, and had referred his application to an IJ.

On March 3, 2009, the IJ denied Aragon's application for NACARA special rule cancellation of removal. Although the IJ found that Aragon had established the extreme hardship and continuous physical presence requirements, she found that Aragon had given false testimony for the purpose of obtaining an immigration benefit, either by fabricating incidents during the NACARA interview to make himself seem more important or by minimizing incidents during the merits hearing to avoid the persecutor bar. Accordingly, the IJ found that Aragon was unable to establish good moral character under 8 U.S.C. § 1101(f)(6). The IJ concluded that Aragon was thus statutorily ineligible for special rule cancellation of removal, and denied his application.

Aragon appealed to the BIA, which held that an application for special rule cancellation of removal is a "continuing" application through removal proceedings. As such, the BIA explained that the seven-year period during which good moral character is required did not end on the date Aragon filed his application, but rather extended until a final administrative decision was issued. The BIA then affirmed the IJ's finding that Aragon made false statements for the purpose of obtaining special rule cancellation of removal, based on the inconsistencies between his testimony at the merits hearing and the NACARA interview. The BIA thus affirmed the IJ's conclusion that Aragon was statutorily

ineligible for special rule cancellation of removal because he could not establish good moral character during the requisite seven-year period. Aragon timely filed this petition for review.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. We review questions of law de novo, except to the extent that deference is owed to the BIA's determination of the governing statutes and regulations. *Barrios*, 581 F.3d at 854.

## DISCUSSION

The BIA and the IJ concluded that Aragon presented false testimony during either the NACARA interview or the merits hearing for the purpose of obtaining NACARA special rule cancellation of removal. Because the BIA concluded that an application for NACARA special rule cancellation of removal is a continuing application, it considered these statements, which were made after Aragon filed his application, when determining whether Aragon was a person of good moral character.

Aragon argues that a NACARA application is not continuing in nature. Thus, he contends that because his purportedly false statements were made after he filed his application, they should not be taken into account for purposes of making the required good moral character determination. The government counters that we must defer to the BIA's determination that an application for special rule cancellation of removal is continuing. *See Garcia*, 24 I. & N. Dec. at 183 (holding, in the context of the continuous

physical presence requirement, that an application for NACARA special rule cancellation of removal is a continuing application, and that an applicant can accrue physical presence until the issuance of a final administrative decision); *cf. In re Ortega-Cabrera*, 23 I. & N. Dec. 793 (B.I.A. 2005) (holding that an application for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1) is a continuing application for purposes of evaluating good moral character).

We employ the *Chevron* two-step framework when reviewing the BIA's interpretation of its governing statutes. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Accordingly, we must first determine whether "the intent of Congress is clear." *Chevron*, 467 U.S. at 842. "If it is, both [we] and the agency 'must give effect to the unambiguously expressed intent of Congress.'" *Marmolejo-Campos*, 558 F.3d at 908 (quoting *Chevron*, 467 U.S. at 842–43). If, however, the statute is "silent or ambiguous," we must then determine "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

"At the first step, we ask whether the statute's plain terms 'directly addres[s] the precise question at issue.'" *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (quoting *Chevron*, 467 U.S. at 843). "If [we], employing traditional tools of statutory construction, ascertain[] that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n.9. Said another way, "[t]he starting point for our interpretation of a statute is always its language," *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989), and "[we] must presume that

a legislature says in a statute what it means and means in a statute what it says there," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  *Id.* at 254 (internal quotation omitted).

The relevant portion of NACARA states that the Attorney General has discretion to cancel removal of an alien, who, among other requirements:

> (ii) has been physically present in the United States for a continuous period of not less than 7 years *immediately preceding the date of such application*; [and]

> (iii) has been a person of good moral character *during such period.*

NACARA § 203 (emphasis added).

The plain terms of the statute require that an applicant for NACARA special rule cancellation of removal be a person of good moral character during the requisite period of continuous physical presence, which is "not less than 7 years immediately preceding the date of such application." NACARA § 203(1)(A)(ii).  When must the applicant have "good moral character?"  He must have it "during such period," *id.* § 203(1)(A)(iii), which clearly refers back to the period of time for which continuous physical presence is required, as stated in NACARA § 203(1)(A)(ii).  The plain language of NACARA is thus clear—the period of time for which an applicant must show good moral character refers to the period of seven years "immediately preceding the date of [the NACARA] application," *id.* § 203(1)(A)(ii), and ends on

the date that application is filed.  For this reason, any conduct occurring after the filing of the application is irrelevant to the good moral character determination required under the plain language of the statute.**[2]**  Under the plain terms of NACARA, an application for special rule cancellation of removal is therefore not a continuing application.

The language of the now-repealed suspension of deportation statute, 8 U.S.C. § 1254(a)(1) (1996) (repealed by IIRIRA on September 20, 1996) (emphasis added), provides additional support for our conclusion that the statutory language relevant to special rule cancellation of removal under NACARA unambiguously establishes that it is not a continuing application.  To have been eligible for suspension of deportation, an alien must have established, *inter alia*, that he "[was] physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and . . . that during all of such period he *was and is* a person of good moral character."  *Id.* (emphasis added); *see also* 8 C.F.R. § 240.65(b) (requiring that alien "was and is" a person of good moral character to be eligible for suspension of

---

**[2]** Moreover, the phrase "date of such application" suggests a fixed date of the application.  NACARA § 203(1)(A)(ii).  Unsurprisingly, the agency's practice has otherwise conformed to the plain language of the statute.  For instance, under the applicable regulations, an alien must make an application for special rule cancellation of removal on Form I-881, which is titled "Application for . . . Special Rule Cancellation of Removal."  8 C.F.R. § 240.63(a).  The regulations also specifically provide that an alien must establish that he "has been physically present in the United States for a continuous period of 7 years *immediately preceding the date the application was filed*" and that he "has been a person of good moral character *during the required period of continuous physical presence.*"  *Id.* § 240.66(b) (emphasis added).

deportation under NACARA).  This language shows that "Congress . . . knew how to expand the required period of good moral character beyond the period immediately preceding the date of application by using the expansive language 'was and is' rather than the past tense 'has been,'" *Cuadra v. Gonzales*, 417 F.3d 947, 951 (8th Cir. 2005), but did not do so for special rule cancellation of removal.  *See Conn. Nat'l Bank*, 503 U.S. at 253–54; *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation omitted)); *see also Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (highlighting a court's "duty to refrain from reading a phrase into the statute when Congress has left it out").

The government asserted at oral argument that the "date of such application" language in the NACARA special rule cancellation of removal statute is ambiguous.[3]  First, the government argued that the NACARA special rule cancellation of removal statute is ambiguous for the same reasons the Seventh Circuit found ambiguity in the cancellation of removal statute, 8 U.S.C. § 1229b(b)(1), in *Duron-Ortiz v. Holder*, 698 F.3d 523 (7th Cir. 2012).  In *Duron-Ortiz*, the Seventh Circuit held that the inclusion of a "stop-time" rule, which provides that any period of continuous physical presence ends "when the alien is served a notice to appear," 8 U.S.C. § 1229b(d)(1), adds ambiguity

---

[3] The government failed in its brief to clearly articulate how the relevant statutory language is ambiguous.  Rather, it focused its argument on how the BIA's interpretation of the language is a permissible construction of the statute.

to the cancellation of removal statute. *Duron-Ortiz*, 698 F.3d at 527. The Seventh Circuit explained that this "interplay of the statutory language" creates ambiguity because the stop-time provision renders the "date of [the] application" language superfluous when the notice to appear is served. *Id.* The Seventh Circuit concluded that "[i]n light of the possible ambiguity the stop-time provision adds to the [cancellation of] removal statute," it must defer to the BIA's reasonable interpretation of when an alien must show good moral character for cancellation of removal. *Id.* However, unlike the provision at issue in *Duron-Ortiz*, NACARA special rule cancellation of removal does not include such a stop-time rule. *See* NACARA § 203. Therefore, the ambiguity that the Seventh Circuit described in the cancellation of removal statute is not present in the NACARA special rule cancellation of removal statute.

Second, the government pointed to Aragon's NACARA application to argue that the statutory language "the date of such application" is ambiguous. *See also Garcia*, 24 I. & N. Dec. at 183. The government represented that Aragon had filed two NACARA applications, and claimed that it was therefore unclear to which date the statute refers. Even if we were to consider arguments based on documents extrinsic to the statute in evaluating the statute's meaning, this argument is plainly incorrect. The record shows that the second application that Aragon submitted was an *update* to his initial application. Moreover, the DHS notice to Aragon, dated September 13, 2006, which notified him that DHS declined to grant his application after the NACARA interview, specifically stated that it was "not a denial of [his] application," and that the application would be referred to an IJ. The notice also provided that the IJ may give Aragon permission "to supplement [his] *present application*." We

see no ambiguity in the language of the statute referring to "the date of such application," and the government's attempts to manufacture ambiguity are unpersuasive.[4]

For these reasons, the plain language of the NACARA special rule cancellation of removal statute unambiguously expresses Congress's intent that the relevant good moral character period is the seven-year period preceding the filing of the application. We therefore hold that an application for special rule cancellation of removal under NACARA is not a continuing application. Because the statutory language is unambiguous, we end our inquiry at *Chevron*'s first step, and need not reach the question whether the BIA's approach is based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 842–43. This result is consistent with that of the Eighth Circuit in *Cuadra v. Gonzales*, which is the only other federal appellate decision to address this precise issue. 417 F.3d at 951.

---

[4] The government also argues that *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1162 (9th Cir. 2009), forecloses Aragon's argument that the period during which good moral character is required for NACARA does not extend until a final administrative decision is issued. *Castillo-Cruz*, however, cited a BIA decision concluding that applications for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C) are continuing, without considering whether to afford the decision deference under *Chevron*. *Id.* We are not bound by this unreasoned conclusion arising in a different context. *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 737 F.3d 1262, 1268 n.8 (9th Cir. 2013) ("Where it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit the issue in a later case." (quoting *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring))).

In reaching this result, we acknowledge that it may allow an alien who presents false testimony after his application is filed to nonetheless show good moral character for purposes of special rule cancellation of removal. However, we decline to allow policy considerations to inject ambiguity into the text of an unambiguous statute. Using extrinsic policy considerations to determine whether there is statutory ambiguity is plainly contrary to Supreme Court precedent on both *Chevron* step one and statutory interpretation more generally. *See, e.g.*, *DePierre v. United States*, 131 S. Ct. 2225, 2233 (2011) ("That we may rue inartful legislative drafting . . . does not excuse us from the responsibility of construing a statute as faithfully as possible to its actual text."); *Conn. Nat'l Bank*, 503 U.S. at 253–54; *Chevron*, 467 U.S. at 842, 843 n.9.

Moreover, our construction of NACARA will not lead to the absurd result that an applicant who provides false testimony following the filing of the application will necessarily obtain relief. As the government acknowledges, special rule cancellation of removal is a discretionary form of relief, *see* NACARA § 203, under which an adjudicator may consider an alien's false testimony as a discretionary factor, even if the alien can establish good moral character during the requisite seven-year period under the statute.

Aragon filed his application for special rule cancellation of removal on June 13, 2006. The relevant period during which Aragon must show good moral character is therefore the seven-year period immediately preceding June 13, 2006. Aragon's purportedly false statements were given during either his NACARA interview on September 13, 2006 or at the merits hearing on January 7, 2009. Both of these dates are outside the relevant time period during which good moral

character is required under NACARA § 203. Thus, the IJ and the BIA incorrectly determined that Aragon's testimony after he filed the NACARA application rendered him statutorily ineligible for special rule cancellation of removal. Accordingly, we grant the petition for review and remand this matter to the BIA to determine, consistent with this opinion, whether Aragon is eligible for NACARA special rule cancellation of removal.

**PETITION FOR REVIEW GRANTED AND REMANDED.**

CALLAHAN, Circuit Judge, dissenting:

The majority holds that a petitioner seeking relief under the Special Rule for Cancellation of Removal, IIRIRA § 309(f), *as amended by* NACARA § 203, *amended by* Pub. L. No. 105–139, 111 Stat. 2644–45 (1997), is not disqualified from relief based upon false testimony given after the filing and during the processing of his immigration application because those falsehoods did not take place within the seven years preceding the date of his application. In arriving at its conclusion, the majority relies on the first prong of the test set forth in *Chevron, U.S.A., Inc. v. Natural Res. Ref. Council, Inc.*, 467 U.S. 837 (1984), finding the statutory language of § 203 to be both clear and compelling. I respectfully disagree. I believe the statute is ambiguous because it does not address the question of whether maintaining a good moral character is a continuing obligation during the processing of an individual's immigration application. Considering the statute in the context of immigration proceedings, I do not agree that an applicant's responsibility to maintain a good

moral character vanishes upon the filing of an application for relief. I would affirm the BIA's determination that Aragon lacks a good moral character and would deny his petition for review.

Pursuant to the applicable *Chevron* two-step test, the court must first determine whether "the intent of Congress is clear." *Chevron*, 467 U.S. at 842. If it is, we give effect to the "unambiguously expressed intent of Congress." *Id*. at 842–43; *see also Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc). However, if the statute is "silent or ambiguous," we must determine "whether the agency's answer is based on a permissible construction of the statute," rather than applying our "own construction of a statutory provision." *Chevron*, 467 U.S. at 843–44.

## A.

Section 203 plainly states that the Attorney General has discretion to cancel removal of an alien who, inter alia, "(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application; [and] (iii) has been a person of good moral character during such period." NACARA § 203. However, the question here is not whether the statute reflects the "unambiguously expressed intent of Congress" to require an applicant to maintain good moral character during the seven years preceding the date of the filing of the application, but instead whether § 203 requires maintaining good moral character throughout the entirety of the immigration application process.

Section 203 is silent on this issue. It contains no language that explicitly addresses Congress's intent concerning an

applicant's duty to show a good moral character throughout the processing of an immigration application.  Congress, through § 203, simply provided a start date—seven years *preceding* the date of the filing of the NACARA application—and failed to mention an end date.  *See* NACARA § 203.

Although the statute's silence might in itself place it outside the coverage of *Chevron*'s first prong, this conclusion is supported, if not compelled, by the requirement that the statute be read in context.  "Statutory language cannot be construed in a vacuum," rather "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Cazerez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  In *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000), the Supreme Court set forth the following standard:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation.  The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context").  It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v.*

*Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995), and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959). Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand. *See United States v. Estate of Romani*, 523 U.S. 517, 530–531 (1998); *United States v. Fausto*, 484 U.S. 439 (1988). In addition, we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency.

(parallel citations omitted). *See also Padash v. I.N.S.*, 358 F.3d 1161, 1170 (9th Cir. 2004) ("We must analyze the statutory provision in question in the context of the governing statute as a whole, presuming congressional intent to create a coherent regulatory scheme.").

Applying this standard to NACARA § 203, I cannot find that the statute is unambiguous. I agree with Judge Melloy's explanation in his dissent in *Cuadra v. Gonzales*, 417 F.3d 947 (8th Cir. 2005), that:

Here, that context includes the prior suspension of deportation statute that permitted the Attorney General to suspend

deportation for an applicant who "was and is a person of good moral character." Immigration and Nationality Act of 1952, Section 244(a), codified as 8 U.S.C. § 1254(a) (1994); *see, e.g., Chanmouny v. Ashcroft*, 376 F.3d 810, 811 n. 1 (8th Cir.2004) (discussing the change in available relief from suspension of deportation to cancellation of removal caused by the IIRIRA). Further, as with any applicant for government benefits, we expect applicants for immigration benefits to be honest in their dealings with the government. *See, e.g.*, 18 U.S.C. § 1001 (prohibiting a person from "knowingly and willfully . . . [making] any materially false . . . statement . . ."). Given the emphasis on honesty and good moral character within all of the pertinent statutes, it is unlikely that an applicant's behavior simply does not matter during the period between the filing of his or her application and the adjudication of his or her claim.

417 F.3d at 952.

Of course, I recognize that the majority in *Cuadra*, as the majority in this case, found that the statute was unambiguous. *Id*. at 951. However, even assuming that interpretation is reasonable, it is not the only reasonable interpretation. "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *Tahoe Regional Planning Agency v. McKay*, 769 F.2d 534, 537 (9th Cir. 1985) (quoting *Robert E. v. Justice Court of Reno Township*, 664 P.2d 957,

959 (Nev.1983)); *see also John v. United States*, 247 F.3d 1032, 1042 (9th Cir. 2001) ("A statute is ambiguous, however, only if it is subject to more than one *reasonable* interpretation.").

The Board of Immigration Appeals ("BIA") has declined to follow the Eighth Circuit's decision in *Cuadra*. In *In re Garcia*, 24 I. & N. Dec 179 (2007), the BIA, after noting the contrary position in *Cuadra*, explained that "congressional intent appears to favor treatment of applications for special rule cancellation as 'continuing applications.'"[1] *Id*. at 181.

---

[1] The BIA wrote:

> Congress specifically exempted applications for special rule cancellation from the "stop-time" rule of section 240A(d)(1) of the Act, which automatically cuts off the accrual of continuous physical presence for cancellation of removal applicants. *See* IIRIRA § 309(f)(1), added by NACARA § 203(b), 111 Stat. at 2198. Because Congress enacted the NACARA to ameliorate the "harsher effects" of prior legislation, it would be anomalous to construe "continuous physical presence" for special rule cancellation of removal applicants in the most restrictive manner. *Masnauskas v. Gonzales*, 432 F.3d 1067, 1070 (9th Cir. 2005). As we stated in *Matter of Ortega-Cabrera*, *supra*, Congress was aware of our longstanding practice of considering similar applications as "continuing" in nature when it enacted this legislation . *Id.* at 797 (noting that "aside from the leftover language 'such period' in section 240A(b)(1)(B), there is no indication that Congress, in creating the 'stop-time' rule, intended to alter the well-established practice of treating the application as a continuing one"). We find support for treating

It explained that in *Matter of Ortega-Cabrera*, 23 I. & N. Dec. 793 (BIA 2005), it:

> examined the coterminous concepts of good moral character and continuous physical presence and concluded that "in line with long-standing practice, an application for cancellation of removal remains a continuing one for purposes of evaluating an alien's moral character." In reaching that conclusion, we noted that a contrary ruling could result in a situation where an alien would be required to be found ineligible for relief based on a disqualifying bad act that occurred many years in the past, whereas one who committed a disqualifying act after the application was filed (that is, during the hearing or shortly before the hearing, depending on when the application is deemed "filed," as discussed below) would not be so ineligible.

*Garcia*, 24 I. & N. Dec. 179 at 182.

The BIA has consistently maintained that because an application for cancellation of removal is a continuing one for purposes of good moral character, the period during which good moral character must be established ends with the entry

---

> applications for special rule cancellation as "continuing" in the fact that Congress did not make the "stop-time" rule applicable to such applications.

23 I. & N. Dec. 179 at 181–82.

of a final administrative order. *See Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 831 (BIA 2012).

Indeed, the Seventh Circuit has indicated that they agree that an application for special rule cancellation is a continuing application. In *Duron-Ortiz v. Holder*, 698 F.3d 523 (7th Cir. 2012), the petitioner argued the statute is not ambiguous and urged the court "to read the statute in such a way that the ten-year period to establish continuous physical presence and good moral character cuts off when an alien is served an NTA." *Id*. at 527. The Seventh Circuit recognized that the statute was susceptible to different readings and deferred to the BIA's reasonable interpretation in *Matter of Ortega-Cabrera* that the period during which good moral character must be established ends with the entry of a final administrative decision. *Id*. at 527–28. The Seventh Circuit noted that reading the statute as urged by the petitioner "would result in precisely the untenable situation the Board sought to avoid—namely, an applicant could commit a crime or otherwise engage in disqualifying activity after being served with an NTA, yet remain eligible for cancellation of removal."[2] *Id*.

In addition, the majority's determination that the statute clearly states that a special rules application is not a continuing application is inconsistent with our reasoning in *Castillo-Cruz v. Holder*, 581 F.3d 1154 (9th Cir. 2009). In *Castillo-Cruz*, we applied the BIA's holding in *Matter of Ortega-Cabrera* that "the relevant ten year period for the

---

[2] Also, the Sixth Circuit in *Callejas v. Holder*, 534 F. App'x. 386 (6th Cir. 2013), noted but did not rule on, the BIA's position that an applicant for special rule cancellation of removal under NACARA accrues physical presence until the issuance of a final administrative decision.

moral character determination is calculated backwards from the date on which the cancellation of removal application is finally resolved by the IJ or the BIA." *Id*. at 1162.

In sum, NACARA § 203 is not unambiguous as to whether an application for special rule cancellation is a continuing application. Not only is the statute silent on this issue, but when reviewed in the context of immigration proceedings, this silence does not does reflect an "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. Accordingly, this appeal should not be decided on the first prong of *Chevron*.

## B.

The arguments set forth by the BIA in *Matter of Ortega-Cabrera*, and *In re Garcia* are clearly reasonable. It would make little sense to hold that an applicant's lies in the application process may not be considered simply because he had not lied for seven years. As Judge Melloy noted in his dissent, "as with any applicant for government benefits, we expect applicants for immigration benefits to be honest in their dealings with the government." *Cuadra*, 417 F.3d at 952. Similarly, both the Seventh Circuit and the BIA describe as untenable, an interpretation pursuant to which "an applicant could commit a crime or otherwise engage in disqualifying activity after being served with an NTA, yet remain eligible for cancellation of removal." *Duron-Ortiz*, 698 F.3d at 528; *see also Matter of Ortega-Cabrera*, 23 I. & N. Dec 793 at 796–97. Indeed, the majority does not really deny that if the statute is ambiguous, the BIA's interpretation

is "a permissible construction of the statute."[3]  *Chevron*, 467 U.S. at 843.

Because I cannot find that § 203 reflects an "unambiguously expressed intent of Congress" as to whether special rule applications are continuing applications, I would decide this petition on the second prong set forth in *Chevron*, 467 U.S. at 843.  I would hold that the BIA's consistent position for the last seven years to be a "permissible construction" of the statute.  Accordingly, I respectfully dissent.

---

[3] The majority's acceptance of the reasonableness of the BIA's position is implicit in its assertion that the majority's "construction of NACARA will not lead to the *absurd result* that an applicant who provides false testimony following the filing of the application will necessarily obtain relief," Majority Opinion at 15 (emphasis added).