**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISIDRO CASTILLO-CRUZ,
                        *Petitioner,*

                v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 06-70896

Agency No.
A091-517-162

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 12, 2009—San Francisco, California

Filed September 17, 2009

Before: Mary M. Schroeder and Stephen Reinhardt,
Circuit Judges, and Louis H. Pollak,* Senior District Judge.

Opinion by Judge Reinhardt

---

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

13471

## COUNSEL

Charles E. Nichol, Esq., San Francisco, California, for the petitioner.

Peter D. Keisler, David V. Bernal, Colette J. Winston, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

REINHARDT, Circuit Judge:

Isidro Castillo-Cruz petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming without opinion the immigration judge's ("IJ") decision to pretermit his application for cancellation of removal. The IJ found that Castillo-Cruz had been convicted of two crimes of moral turpitude, petty theft and receipt of stolen property, rendering him statutorily inadmissible under 8 U.S.C. § 1182(a)(2)(A)(2)(i)(I) and ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).[1] The IJ found that Castillo-Cruz's criminal convictions, because they involve crimes of moral turpitude, interrupt the period of ten years of continuous physical presence required for cancellation of removal, *see* 8 U.S.C. § 1229b(d)(1). The IJ further found that Castillo-Cruz's criminal convictions preclude him from showing "good moral character" during the requisite ten-year period, which the IJ stated should be calculated from the date Castillo-Cruz first entered the United States. *But see* 8 U.S.C. § 1229b(1)(A)-(B) (stating that for the purposes of cancellation, an applicant must demonstrate good moral character "for a continuous period of not less than 10 years immediately preceding the date of such application.")

---

[1]Although the Immigration Court does not set forth this finding as a separate element of its decision, it is implicit in the IJ's ruling that Castillo-Cruz's convictions for crimes of moral turpitude trigger the "stop-time" rule under 8 U.S.C. § 1229b(d)(1). The IJ's finding that the crimes of which Castillo-Cruz was convicted were crimes of moral turpitude is thus the ultimate basis of the IJ's denial of Castillo-Cruz's application for cancellation of removal.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal, and under 8 U.S.C. § 1252(a)(2)(D) to review the constitutional and legal questions raised by individuals found removable based on criminal activity. *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1056-57 (9th Cir. 2006). We affirm the IJ's determination that Castillo-Cruz's conviction for petty theft constituted a crime of moral turpitude, but reverse with respect to the receipt of stolen property determination. We further reverse with respect to the IJ's good moral character determination. Castillo-Cruz's single conviction for petty theft may fall within the petty offenses exception, *see* 8 U.S.C. § 1182(a)(2)(ii)(II). If it does, Castillo-Cruz would not be subject to the "stop time" rule of 8 U.S.C. § 1229b(d)(1) precluding him from establishing the requisite period of continuous presence. We therefore remand to the BIA so that it may decide in the first instance whether the petty theft conviction falls within the petty offenses exception, *see* 8 U.S.C. § 1182(a)(2)(ii)(II), and so that it may resolve any other issues that may exist regarding Castillo-Cruz's application for cancellation of removal.

## I. BACKGROUND

Isidro Castillo-Cruz is a Mexican citizen who entered the United States around March of 1984 without inspection. He is the father of four United States citizen children, Lilibethe, Angel Alexis, Jeanette, and Edward Jesus.

In May 2003, the Department of Homeland Security ("DHS") served Castillo-Cruz with a notice to appear, charging him with being removable under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted. The Notice to Appear also alleged that he had been convicted of possession of stolen property in violation of Cal. Penal Code § 496 in April 1990.

Castillo-Cruz admitted the allegations in his Notice to Appear and conceded removability, but sought cancellation of removal under 8 U.S.C. § 1229b(b). In his application for cancellation of removal, he listed his prior convictions, which included, among others,[2] a 1989 petty theft misdemeanor conviction under Cal. Penal Code § 484/488, and a 1990 conviction for receipt of stolen property under Cal. Penal Code § 496.[3] The record of conviction showed that Castillo-Cruz had been sentenced to five months jail time and three years of probation for the latter offense.[4]

The immigration judge ("IJ") granted the DHS's motion to pretermit Castillo-Cruz's cancellation application on the basis that both his 1989 conviction for theft and 1990 conviction for receipt of stolen property were crimes of moral turpitude.[5]

---

[2]Castillo-Cruz admitted to other convictions, but they are not relevant to the issues before this court.

[3]The removal hearing was continued a number of times so that Castillo-Cruz would have the opportunity to have his § 496 felony conviction reduced from a felony to a misdemeanor. The Santa Clara Superior Court reduced the conviction to a misdemeanor on November 20, 2003. Castillo-Cruz also attempted to have his § 484/488 petty theft misdemeanor conviction vacated, but was, in that respect, unsuccessful.

[4]The government did not submit the record of conviction for the § 484/488 petty theft offense, although a print out of Castillo-Cruz's criminal record shows that he was sentenced to two years of probation for the offense.

[5]We recently held that an alien convicted under California Penal Code § 496(a) and sentenced to a term of imprisonment of sixteen months was convicted of an aggravated felony. *See Verdugo-Gonzalez v. Holder*, No. 06-73733. An aggravated felony theft offense is "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). In *Verdugo-Gonzalez*, the petitioner's application for cancellation of removal was pretermitted because he had been convicted of a theft offense, receiving stolen property, for which he was sentenced to more than one year in prison. Castillo-Cruz, although charged under the same state statute as Verdugo-Gonzalez, was sentenced to only five months imprisonment, and thus could not be deemed to be an aggravated felon: hence the IJ's decision to pretermit Castillo Cruz's application for cancellation of removal based on moral turpitude.

The IJ found that because both crimes occurred within less than ten years of Castillo-Cruz's entry in 1984, he could not establish the requisite ten year period of continuous residence or good moral character. On April 4, 2005, the IJ granted Castillo-Cruz voluntary departure.

The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without issuing an opinion, and reinstated the voluntary departure period. Castillo-Cruz filed a timely petition for review.

## II.   ANALYSIS

"[W]e review de novo the BIA's determination of questions of law, except to the extent that deference is owed to its interpretation of the governing statutes and regulations." *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011 (9th Cir. 2006); *see also Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 651 (9th Cir. 2004).

### A.   A conviction for receipt of stolen property under § 496 is not categorically a crime of moral turpitude

The IJ relied on Ninth Circuit authority in concluding that Castillo-Cruz's convictions were for crimes of moral turpitude. The IJ correctly determined that Castillo-Cruz's 1989 conviction for petty theft under California Penal Code § 484/488 constituted a crime of moral turpitude under our case law. *See Flores Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008); *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136 (9th Cir. 1999), *cert. denied*, 531 U.S. 842 (2000). The IJ erred, however, in relying on *Patel v. INS*, 542 F.2d 796 (9th Cir. 1976), as a basis for its conclusion that the 1990 conviction for receipt of stolen property under California Penal Code § 496(a) amounted to a crime of moral turpitude. In *Patel*, the petitioner had conceded that his conviction was for a crime of moral turpitude, *see id.* at 798, and, in any

event, *Patel* preceded *Taylor v. United States*, 495 U.S. 575 (1990), which established the mode of analysis that we now follow in deciding whether a conviction is categorically a crime of moral turpitude.[6]

**[1]** Castillo-Cruz argues that § 496(a) punishes conduct that is categorically broader than a crime of moral turpitude because a person can be convicted under that section even if he did not have the intent to permanently deprive the rightful owner of property. The BIA has held in a number of cases that a theft offense is not categorically a crime of moral turpitude if the statute of conviction is broad enough to criminalize a taking with intent to deprive the owner of his property only temporarily. *See, e.g.*, *Matter of Grazley*, 14 I. & N. Dec. 330, 333 (BIA 1973) ("Ordinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended."); *In the Matter of P*, 2 I. & N. Dec. 887 (B.I.A. 1947) (holding that offenses like joy riding are not morally turpitudinous because they do not involve the intent to deprive the owner of the property permanently); *Matter of H*, 2 I & N Dec. 864, 865 (BIA 1947) ("[T]he element which must exist before the crime of theft or stealing is deemed one involving moral turpitude is that the offense must be one which involves a permanent taking as distinguished from a temporary one."). In its recent case law, the BIA continues to consider "whether there was an intention to permanently deprive the owner of his property." *See In re Jurado-Delgado*, 24 I & N. Dec. 29, 33 (BIA 2006).

**[2]** We accord substantial deference to established constructions by the BIA of the statutes it is charged to adminis-

---

[6]*Wadman v. INS*, 329 F.2d 812 (9th Cir. 1964), also preceded *Taylor*. Although we held that a conviction under British law for receipt of property knowing to have been stolen is a crime of moral turpitude, we did not specify what element of that crime made it morally turpitudinous and we did not analyze whether that element would be present in every conviction under that law.

ter. *See Perez-Enriquez v. Gonzales*, 463 F.3d 1007, 1009 (9th Cir. 2006) (en banc). We are aware that the BIA has held that receiving property with the knowledge that it was taken with an intent to deprive the owner of property permanently amounts to a crime of moral turpitude. *See, e.g.*, *Matter of Salvail*, 17 I. & N. Dec. 19, 20 (BIA 1979); *In the Matter of G*, 2 I. & N. Dec. 235, 237-38 (BIA 1945).[7] It has not, however, expressly held that the recipient of stolen property has committed a theft offense amounting to a crime of moral turpitude if he acted with such knowledge, but not with the intent to deprive the owner of property permanently. To the contrary, it has held consistently that in order for an individual to have committed a crime of moral turpitude, that person must have behaved in a way that is "inherently base, vile, or depraved . . . ." *In re Jurado-Delgado*, 24 I & N. Dec. at 33. In the context of theft offenses, such as receipt of stolen property, the BIA has interpreted this baseness to be evinced in the offender's "intention to permanently deprive the owner of his property." *Id.*[8] If joyriding is not a crime of moral turpitude,

[7]The Second Circuit, in *Michel v. INS*, 206 F.3d 253 (2d. Cir. 2000), and the Third Circuit in *Leon-Reynoso v. Ashcroft*, 293 F.3d 633 (3d. Cir. 2002), have further interpreted *Matter of Salvail* to hold that knowing receipt of stolen property may constitute a crime of moral turpitude.

[8]In this respect, there is a clear distinction between the standard applied to determine whether a theft offense is an "aggravated felony" and the standard applied to determine whether a theft offense is a "crime of moral turpitude." As we recently held in *Verdugo-Gonzalez v. Holder*, 06-73733, there is a categorical match between the full range of conduct proscribed by section 496(a) of the California Penal Code and the generic definition of a theft offense aggravated felony. *See Gonzalez v. Duenas-Alvarez*, 549 U.S. at 189 (defining a generic theft offense as "the taking of property or an exercise of control over property . . . even if such deprivation is *less than total or permanent.*")(emphasis added). There cannot however, be a categorical match between the full range of conduct proscribed by section 496(a) of the California Penal Code and the generic definition of a theft offense crime of moral turpitude. *See Matter of Grazley*, 14 I. & N. Dec. at 333 ("a conviction for theft is considered to involve moral turpitude *only when a permanent taking is intended.*") (emphasis added). Thus, there is no inconsistency between *Verdugo-Gonzalez* and our present decision.

however, it would seem that receipt of stolen property for the purpose of joyriding would also not be a crime of moral turpitude, or to put it more generally, if an intent to deprive permanently is necessary to find an act of theft morally turpitudinous, the same principle would appear to apply to the receipt of stolen property. A recipient who intends, by receiving the stolen property, to deprive its rightful owner of its possession only temporarily would not seem to have committed an act that may be termed morally turpitudinous. We therefore consider whether § 496(a) criminalizes conduct broader than that undertaken with the intent to deprive the owner of property permanently.

[3] As we noted earlier, we have consistently held that acts of petty theft constitute crimes of moral turpitude. *See Flores-Juarez v. Mukasey*, 530 F.3d 1020, 1022 (9th Cir. 2008); *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136 (9th Cir. 1999), *cert. denied*, 531 U.S. 842 (2000). Under Californian law, a conviction for grand theft or petty theft under Cal. Penal Code § 484 requires, in common with other crimes of moral turpitude, "the specific intent to deprive the victim of his property permanently." *People v. Albert A.*, 47 Cal. App. 4th 1004, (Cal. App. Ct. 1996). *See also People v. Guerra*, 40 Cal. 3d 377, 385 (1985), *People v. Butler*, 65 Cal. 2d 569, 572-73 (1967), *overruled on other grounds by People v. Tufunga*, 21 Cal. 4th 935, 956 (1999). Receipt of stolen property under Cal. Penal Code § 496(a) has no such requirement, but rather permits conviction for an intent to deprive an individual of his property temporarily. Receipt of stolen property under Cal. Penal Code § 496(a) thus falls outside the generic definition of an offense, such as theft, that involves an intent to permanently deprive an individual of his property, and, accordingly, outside the generic definition of a crime of moral turpitude.

In *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), the Supreme Court held that "to find that a state statute creates a crime outside the generic definition of a listed crime in a fed-

eral statute requires . . . a realistic probability . . . that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 193. The Supreme Court suggested that to "show that realistic possibility, an offender . . . must at least point to his own case or to other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Castillo-Cruz has shown that there is a "realistic probability" that a defendant who acted with general criminal intent, but with the intent to deprive the owner of possession only temporarily, might be held liable under § 496(a).

To obtain a § 496(a) conviction, the prosecution must prove only that: (1) the property was stolen; (2) the defendant knew that the property was stolen; and (3) the defendant had possession of such property. *See People v. Land*, 30 Cal. App. 4th 220, 223 (Cal. App. Ct. 1994). There is no requirement of an intent on the part of the recipient to deprive the owner of possession permanently. Indeed, California courts have upheld convictions under § 496 in the context of joyriding, where there was indisputably no such intent. In *People v. Jaramillo*, 16 Cal. 3d 752 (Cal. 1976), the California Supreme Court held that a defendant convicted under California Vehicle Code § 10851 for intending to temporarily deprive the owner of possession of his vehicle could also be found guilty of receipt of stolen goods under § 496. *See id.* at 758-59. *See also People v. Austell*, 223 Cal. App. 3d 1249, 1252 (Cal. App. Ct. 1990) (holding that dual convictions under the California Vehicle Code § 10851 and California Penal Code § 496 were proper because defendant was not convicted under § 10851 for intending to steal the vehicle but rather for simply driving it); *In re Jorge C.*, 2008 WL 2536076 (Cal. App. Ct. 2008) (unpublished) (upholding conviction under § 496 for a defendant characterized as a "joy rider").[9]

---

[9]Although an unpublished opinion of the California Court of Appeals should generally not be cited, unpublished cases are pertinent for showing that there is a "realistic probability" that § 496 has been and will be applied to conduct falling outside of the generic definition of a crime of moral turpitude. *See Vizcarra-Ayala v. Muksey*, 514 F.3d 870, 876 n.3 (9th Cir. 2008).

**[4]** We conclude that a conviction for receipt of stolen property under § 496 is not categorically a crime of moral turpitude because it does not require an intent to permanently deprive the owner of property. Castillo-Cruz's conviction is not a crime of moral turpitude under the modified categorical analysis, as the government conceded at oral argument that there is no evidence in the record establishing that his offense involved an intent to deprive the owner of possession permanently. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132-33 (9th Cir. 2006) (en banc).

**B. Castillo-Cruz's 1989 conviction may be eligible for the "petty offenses" exception under 8 U.S.C. § 1182(a)(2)(ii)(II) and he may therefore not be subject to the "stop time" rule**

Castillo-Cruz's single conviction for a crime of moral turpitude—petty theft—may fall within the petty offenses exception set forth at 8 U.S.C. § 1182(a)(2)(A)(ii)(II). This provision states that the bar to admission of an alien convicted for a crime of moral turpitude shall not apply to an alien who has committed only one such crime if:

> [T]he maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

California Penal Code Section 490 states that "Petty theft is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding six months, or both." The administrative record indicates that Castillo-Cruz was sentenced to two years probation. It therefore appears that Castillo-Cruz's 1989 conviction for petty theft may fall within the petty offenses exception.

If Castillo-Cruz's conviction for petty theft falls within the petty offenses exception, it would not render him inadmissible to the United States. In such circumstances, Castillo-Cruz would not be subject to the "stop time" rule of 8 U.S.C. § 1229b(d)(1), which states that "any period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States." Castillo-Cruz's twenty-five years of continuous residence in the United States would therefore fulfil the requirement under 8 U.S.C. § 1229b(1)(A) that in order to be eligible for cancellation of removal an alien has "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application."

## C. Castillo-Cruz did not fail to establish good moral character during the ten-year period

**[5]** We further find that the IJ erred as a matter of law in finding that Castillo-Cruz failed to establish good moral character during the ten-year period as required by 8 U.S.C. § 1229b(1)(B). The INA states that the Attorney General may cancel removal of an alien applicant who has been a person of good moral character "for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(1)(A)-(B). In *Matter of Ortega-Cabrera*, 23 I. & N. Dec. 793 (BIA 2005), the BIA held that the relevant ten year period for the moral character determination is calculated backwards from the date on which the cancellation of removal application is finally resolved by the IJ or the BIA. *Id.* at 797. Castillo-Cruz was convicted for petty theft in 1989 and for receipt of stolen property in 1990. More than ten years had therefore passed between the date of conviction for either offense and the IJ's decision of February 1, 2005. As the government concedes in its brief, these convictions do not therefore bar Castillo-Cruz from establishing the prerequisite good moral character.

**[6]** We remand to the BIA so that it may decide in the first instance whether Castillo-Cruz's petty theft conviction falls within the petty offenses exception, *see* 8 U.S.C. § 1182(a)(2)(A)(ii)(II), and so that it may resolve any other issues that may exist regarding his application for cancellation of removal.

GRANTED and REMANDED.