CALLAHAN, Circuit Judge,
dissenting:
The majority holds that a petitioner seeking relief under the Special Rule for Cancellation of Removal, IIRIRA § 309(f), as amended by NACARA § 203, amended by Pub.L. No. 105-139, 111 Stat. 2644-45 (1997), is not disqualified from relief based upon false testimony given after the filing and during the processing of his immigration application because those falsehoods did not take place within the seven years preceding the date of his application. In arriving at its conclusion, the majority relies on the first prong of the test set forth in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), finding the statutory language of § 203 to be both clear and compelling. I respectfully disagree. I believe the statute is ambiguous because it does not address the question of whether maintaining a good moral character is a continuing obligation during the processing of an individual’s immigration application. Considering the statute in the context of immigration proceedings, I do not agree that an applicant’s responsibility to maintain a good moral character, vanishes upon the filing of an application for relief. I would affirm the BIA’s determination that Aragon lacks a good moral character and would deny his petition for review.
Pursuant to the applicable Chevron two-step test, the court must first determine whether “the intent of Congress is clear.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. If it is, we give effect to the “unambiguously expressed intent of Congress.” Id. at 842-43, 104 S.Ct. 2778; see also Marmolejo-Campos v. Holder, 558 F.3d 903, 908 (9th Cir.2009) (en banc). However, if the statute is “silent or ambiguous,” we must determine “whether the agency’s answer is based on a permissible construction of the statute,” rather than applying our “own construction of a statutory provision.” Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778.
A.
Section 203 plainly states that the Attorney General has discretion to cancel removal of an alien who, inter alia, “(ii) has been physically present in the United *708 States for a continuous period of not less than 7 years immediately preceding the date of such application; [and] (iii) has been a person of good moral character during such period.” NACARA § 203. However, the question here is not whether the statute reflects the “unambiguously expressed intent of Congress” to require an applicant to maintain good moral character during the seven years preceding the date of the filing of the application, but instead whether § 203 requires maintaining good moral character throughout the entirety of the immigration application process.
Section 203 is silent on this issue. It contains no language that explicitly addresses Congress’s intent concerning an applicant’s duty to show a good moral character throughout the processing of an immigration application. Congress, through § 203, simply provided a start date — seven years preceding the date of the filing of the NACARA application— and failed to mention an end date. See NACARA § 203.
Although the statute’s silence might in itself place it'outside the coverage of Chevron’s first prong, this conclusion is supported, if not compelled, by the requirement that the statute be read in context. “Statutory language cannot be construed in a vacuum,” rather “[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905, 912 (9th Cir.2004) (quoting Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). In FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), the Supreme Court set forth the following standard:
In determining‘whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning — or ambiguity — -of certain words or phrases may only become evident when placed in context. See Brown v. Gardner, 513 U.S. 115, 118 [115 S.Ct. 552, 130 L.Ed.2d 462] (1994) (“Ambiguity is a creature not of definitional possibilities but of statutory context”). It is a “fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809 [109 S.Ct. 1500, 103 L.Ed.2d 891] (1989). A court must therefore interpret the statute “as a symmetrical and coherent regulatory scheme,” Gustafson v. Alloyd Co., 513 U.S. 561, 569 [115 S.Ct. 1061, 131 L.Ed.2d 1] (1995), and “fit, if possible, all parts into an harmonious whole,” FTC v. Mandel Brothers, Inc., 359 U.S. 385, 389 [79 S.Ct. 818, 3 L.Ed.2d 893] (1959). Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand. See United States v. Estate of Romani 523 U.S. 517, 530-531 [118 S.Ct. 1478, 140 L.Ed.2d 710] (1998); United States v. Fausto, 484 U.S. 439 [108 S.Ct. 668, 98 L.Ed.2d 830] (1988). In addition, we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency.
(parallel citations omitted). See also Padash v. I.N.S., 358 F.3d 1161, 1170 (9th Cir.2004) (“We must analyze the statutory provision in question in the context of the governing statute as a whole, presuming congressional intent to create a coherent regulatory scheme.”).
*709 Applying this standard to NACARA § 203, I cannot find that the statute is unambiguous. I agree with Judge Melloy's explanation in his dissent in Cuadra v. Gonzales, 417 F.3d 947 (8th Cir.2005), that:
Here, that context includes the prior suspension of deportation statute that permitted the Attorney General to suspend deportation for an applicant who “was and is a person of good moral character.” Immigration and Nationality Act of 1952, Section 244(a), codified as 8 U.S.C. § 1254(a) (1994); see, e.g., Chanmouny v. Ashcroft, 376 F.3d 810, 811 n. 1 (8th Cir.2004) (discussing the change in available relief from suspension of deportation to cancellation of removal caused by the IIRIRA). Further, as with any applicant for government benefits, we expect applicants for immigration benefits to be honest in their dealings with the government. See, e.g., 18 U.S.C. § 1001 (prohibiting a person from “knowingly and willfully ... [making] any materially false ... statement ... ”). Given the emphasis on honesty' and good moral character within all of the pertinent statutes, it is unlikely that an applicant’s behavior simply does not matter during the period between the filing of his or her application and the adjudication of his or her claim.
417 F.3d at 952.
Of course, I recognize that the majority in Cuadra, as the majority in this ease, found that the statute was unambiguous. Id. at 951. However, even assuming that interpretation is reasonable, it is not the only reasonable interpretation. “A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two.or more senses.” Tahoe Regional Planning Agency v. McKay, 769 F.2d 534, 537 (9th Cir.1985) (quoting Robert E. v. Justice Court of Reno Township, 99 Nev. 443, 664 P.2d 957, 959 (1983)); see also John v. United States, 247 F.3d 1032, 1042 (9th Cir.2001) (“A statute is ambiguous, however, only if it is subject to more than one reasonable interpretation.”).
The Board of Immigration Appeals (“BIA”) has declined to follow the Eighth Circuit’s decision in Cuadra. In In re Garcia, 24 I. & N. Dec 179 (2007), the BIA, after noting the contrary position in Cuadra, explained that “congressional intent appears to favor treatment of applications for special rule cancellation as ‘continuing applications.’ ”[1] Id. at 181. It explained that in Matter of Ortega-Cabrera, 23 I. & N. Dec. 793 (BIA 2005), it:
*710 examined the coterminous concepts of good moral character and continuous physical presence and concluded that “in line with long-standing practice, an application for cancellation of removal remains a continuing one for purposes of evaluating an alien’s moral character.” In reaching that conclusion, we noted that a contrary ruling could result in a situation where an alien would be required to be found ineligible for relief based on a disqualifying bad act that occurred many years in the past, whereas one who committed a disqualifying act after the application was filed (that is, during the hearing or shortly before the hearing, depending on when the application is deemed “filed,” as discussed below) would not be so ineligible.
Garcia, 24 I. & N. Dec. 179 at 182.
The BIA has consistently maintained that because an application for cancellation of removal is a continuing one for purposes of good moral character, the period during which good moral character must be established ends with the entry of a final administrative order. See Matter of Isidro-Zamorano, 25 I. & N. Dec. 829, 831 (BIA 2012).
Indeed, the Seventh Circuit has indicated that they agree that an application for special rule cancellation is a continuing application. In Duron-Ortiz v. Holder, 698 F.3d 523 (7th Cir.2012), the petitioner argued the statute is not ambiguous and urged the court “to read the statute in such a way that the ten-year period to establish continuous physical presence and good moral character cuts off when an alien is served an NTA.” Id. at 527. The Seventh Circuit recognized that the statute was susceptible to different readings and deferred to the BIA’s reasonable interpretation in Matter of Ortegar-Cabrera that the period during which good moral character must be established ends with the entry of a final administrative decision. Id. at 527-28. The Seventh Circuit noted that reading the statute as urged by the petitioner “would result in precisely the untenable situation the Board sought to avoid — namely, an applicant could commit a crime or otherwise engage in disqualifying activity after being served with an NTA, yet remain eligible for cancellation of removal.”[2] Id.
In addition, the majority’s determination that the statute clearly states that a special rules application is not a continuing application is inconsistent with our reasoning in Castillo-Cruz v. Holder, 581 F.3d 1154 (9th Cir.2009). In Castillo-Cruz, we applied the BIA’s holding in Matter of Ortegar-Cabrera that “the relevant ten year period for the moral character determination is calculated backwards from the date on which the cancellation of removal application is finally resolved by the IJ or the BIA.” Id. at 1162.
In sum, NACARA § 203 is not unambiguous as to whether an application for special rule cancellation is a continuing application. Not only is the statute silent on this issue, but when reviewed in the context of immigration proceedings, this silence does not does reflect an “unambiguously expressed intent of Congress.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. Accordingly, this appeal should not be decided on the first prong of Chevron.
B.
The arguments set forth by the BIA in Matter of Ortegar-Cabrera, and In re Gar *711 cia are clearly reasonable. It would make little sense to hold that an applicant’s lies in the application process may not be considered simply because he had not lied for seven years. As Judge Melloy noted in his dissent, “as with any applicant for government benefits, we expect applicants for immigration benefits to be honest in their dealings with the government.” Cuadra, 417 F.3d at 952. Similarly, both the Seventh Circuit and the BIA describe as untenable, an interpretation pursuant to which “an applicant could commit a crime or otherwise engage in disqualifying activity after being served with an NTA, yet remain eligible for cancellation of removal.” Duron-Ortiz, 698 F.3d at 528; see also Matter of Ortega-Cabrera, 23 I. & N. Dec 793 at 796-97. Indeed, the majority does not really deny that if the statute is ambiguous, the BIA’s interpretation is “a permissible construction of the statute. ”[3] Chevron, 467 U.S. at 843, 104 S.Ct. 2778.
Because I cannot find that § 203 reflects an “unambiguously expressed intent of Congress” as to whether special rule applications are continuing applications, I would decide this petition on the second prong set forth in Chevron, 467 U.S. at 843, 104 S.Ct. 2778. I would hold that the BIA’s consistent position for the last seven years to be a “permissible construction” of the statute. Accordingly, I respectfully dissent.

. The BIA wrote:
Congress specifically exempted applications for special rule cancellation from the "stop-time” rule of section 240A(d)(1) of the Act, which automatically cuts off the accrual of continuous physical presence for cancellation of removal applicants. See IIRIRA § 309(f)(1), added by NACARA § 203(b), 111 Stat. at 2198. Because Congress enacted the NACARA to ameliorate the "harsher effects” of prior legislation, it would be anomalous to construe "continuous physical presence" for special rule cancellation of removal applicants in the most restrictive manner. Masnauskas v. Gonzales, 432 F.3d 1067, 1070 (9th Cir.2005). As we stated in Matter of Ortega-Cabrera, supra, Congress was aware of our longstanding practice of considering similar applications as "continuing” in nature when it enacted this legislation. Id. at 797 (noting that "aside from the leftover language ‘such period’ in section 240A(b)(1)(B), there is no indication that Congress, in creating the ‘stop-time’ rule, intended to alter the well-established practice of treating the application as a continuing one”). We find support for treating applications for special rule cancellation as “continuing” in the fact that Congress did not make the "stop-time” rule applicable to such applications.
23 I. & N. Dec. 179 at 181-82.

. Also, the Sixth Circuit in Callejas v. Holder, 534 F. App'x. 386 (6th Cir.2013), noted but did not rule on, the BIA’s position that an applicant for special rule cancellation of removal under NACARA accrues physical presence until the issuance of a final administrative decision.

. The majority’s acceptance of the reasonableness of the BIA's position is implicit in its assertion that the majority's "construction of NACARA will not lead to the absurd result that an applicant who provides false testimony following the filing of the application will necessarily obtain relief,” Majority Opinion at 707 (emphasis added).