Filed 5/2/23  P. v. Nahman CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID NAHMAN,<br><br>        Defendant and Appellant. | B319838<br><br>(Los Angeles County<br>Super. Ct. No. LA076612) |

APPEAL from an order of the Superior Court of Los Angeles County.  Gregory A. Dohi, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant David Nahman is a Canadian citizen. On June 4, 2014, a Los Angeles jury convicted him of (1) grand theft of personal property, namely a diamond necklace (Pen. Code, § 487, subd. (a)),[1] with a true finding that the loss or damage exceeded $200,000, (2) second degree commercial burglary (§ 459), and (3) grand theft from a pawnbroker or second hand dealer (§ 484.1, subd. (a)), with a true finding that the loss or damage exceeded $950.[2] He was sentenced to a term of five years in state prison. Following his successful appeal, the trial court resentenced defendant to county jail. (*People v. Nahman* (Feb. 18, 2016, B259175) [nonpub. opn.].)

On December 19, 2019, defendant was released from jail. On January 13, 2020, he was placed in the custody of the Immigration and Customs Enforcement. He is currently awaiting removal proceedings.

On March 10, 2020, defendant filed a motion to vacate his convictions pursuant to section 1016.5 and former section 1473.7 (the 2020 motion). The trial court denied his motion, and defendant timely appealed. On November 9, 2021, we dismissed his appeal from the denial of the 2020 motion without prejudice to him refiling a new motion in light of recent amendments to

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  Defendant was also tried on charges for attempted murder and dissuading a witness by force or threat. The jury could not reach a verdict on these two counts. Defendant was later retried on those counts, and on May 28, 2019, the jury found him not guilty.

section 1473.7. (*People v. Nahman* (Nov. 9, 2021, B306988) [nonpub. opn.].)

In accordance with our November 9, 2021, order, defendant refiled his motion to vacate his convictions pursuant to sections 1016.5[3] and 1473.7. The trial court denied his motion, and defendant timely appealed.

We affirm the trial court's order.

## PROCEDURAL BACKGROUND

On February 22, 2022, after defendant's appeal from the trial court's order denying his 2020 motion was dismissed, defendant filed a new motion to vacate his convictions pursuant to sections 1016.5 and 1473.7. He argued: (1) there was newly discovered evidence proving his innocence; (2) he was offered three years probation at the plea bargaining stage, but his attorneys specifically advised him not to accept the deal, and there was no explanation of the immigration consequences in this case. In support, he only attached his own declaration.[4]

At the March 28, 2022, hearing, defendant did not call defense counsel or the prosecutor that handled his first trial to testify. Instead, he simply presented oral argument to the trial court.

---

[3] Defendant does not raise an argument pursuant to section 1016.5 in his appellate briefs.

[4] His declaration was not filed in accordance with Code of Civil Procedure section 2015.5 as defendant did not certify or declare "under penalty of perjury" that his assertions were "true and correct." (Code Civ. Proc., § 2015.5; § 1102 [rules of evidence in civil actions are applicable to criminal actions].)

3

The trial court asked defendant: "On the immigration consequences, what did [defense counsel] do wrong?" Defendant replied that she failed to convey "an offer from the D.A. that—to combine all the cases and this case would be dismissed or would be reduced to a misdemeanor." He asserted that he "could have accepted that deal if [he] knew that the felony conviction would . . . result in deportation." In other words, defendant argued that defense counsel "could have negotiated" a plea with no immigration consequences; she could have "at least tr[ied]," but "she had no idea . . . about immigration. She had no idea about criminal law anyway, too. But she had no idea about immigration."

The trial court tried to clarify defendant's argument: "So what you're saying is that your lawyer failed you by not negotiating a non-deportable offense; correct?" Defendant replied that "she never even told me that [if he lost at trial that there would be] a deportation consequence."

The conversation continued, with the trial court summarizing: "[A]t no time were you ever offered by the District Attorney's Office a plea to a non-deportable crime. That never happened." Defendant responded: "No. She never negotiated it. She never suggested it. She had no idea."

The People then asserted that at the time defendant was being tried, he "refused to take any sort of deal whatsoever, and he was very adamant that he was innocent of all the charges. [¶] So this talk about a negotiation for a lesser charge that may have happened if [defense counsel] had done better negotiation, I don't think is valid." The prosecutor also pointed out that defendant was making an argument of ineffective assistance of counsel, but failed to notify his defense attorney of this motion. And the trial

4

court could only issue a finding of ineffective assistance of counsel upon timely advance notice to defense counsel. (See § 1473.7, subd. (g).)

Thereafter, defendant indicated that there was newly discovered evidence that supported his motion. Specifically, defendant stated that the evidence showed that one of the victims, Amir Wolfe (Wolfe), stated that defendant did not steal from him. Defendant added: "[T]his specific evidence . . . was never brought in front of the jury. They never heard it. [¶] . . . [¶] This is only one evidence that [defense counsel] didn't bring [to] the jurors." The prosecutor interjected, "Your Honor, just so we're clear, [defendant] is saying this is evidence that his attorney was aware of at the time of trial, he's claiming she never brought forward in front of the jury." Defendant responded that he "[had] no idea if [defense counsel] read that conversation" and stated that he found it after reviewing counsel's file after his third trial. The prosecutor reiterated that the statute did not apply because the evidence was known at the time of trial.

Ultimately, the trial court denied defendant's motion for the following reasons: "Number one, [defendant] cites Penal Code section 1016.5, a section that really doesn't apply at all. That comes up . . . when the judge has failed to give the required immigration advisement.

"Number two, once again, quoting from [*People v. Vivar* (2021) 11 Cal.5th 510, 529–530 (*Vivar*)] [defendant] has [failed] to corroborate his claims of inadequate advisement by his lawyer with objective evidence.

"In the *Vivar* case, . . . there was correspondence . . . and ample other outside evidence to show that the main focus of Mr. Vivar's thinking was immigration consequences.

"Here there's nothing to show that the primary focus, or even a major focus of [defendant]'s dealings with his lawyer involved immigration consequences. He was facing a life term on an extremely violent felony. He was facing many, many counts of theft-related conduct. There's nothing to show that his main focus was avoiding deportation.

"Third, there's no objective evidence of faulty advice. We have nothing from [defense counsel], no interview, no statement, and setting aside the point that [the prosecutor] makes, that there's a notice requirement, there's nothing to show that, apart from [defendant]'s assertion, there's nothing to show that [defense counsel] gave bad legal advice when it came to immigration consequences, just his bald assertion about that.

"Fourth, there's no evidence at all that the prosecution would have offered something different. In the *Vivar* case, the records show that the prosecution made an alternate offer that would have avoided immigration consequences and that the lawyer advised the client not to take it or didn't emphasize it. Here, there's absolutely no evidence that the prosecution would have made an offer that didn't involve a crime of moral turpitude rendering [defendant] subject to deportation.

"Finally, the assertions involving newly discovered evidence are inadequate. As [the prosecutor] points out, even [defendant] admits that the evidence had been discovered quite sometime ago. It just hadn't necessarily been shared with him, so it's not newly discovered in that sense. Moreover, it's described in such vague terms that doesn't give me an adequate basis for me to overturn the jury's verdicts.

"So for all of these reasons, the motion is respectfully denied."

## DISCUSSION

### I. *Relevant law*

Former section 1473.7, subdivision (a)(1), provided: "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons: [¶] . . . The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Former § 1473.7, subd. (a)(1).) As explained by the Legislature, this statute creates "'an explicit right for a person no longer imprisoned or restrained to prosecute a motion to vacate a conviction or sentence based on a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere, or based on newly discovered evidence of actual innocence, as specified.'" (*People v. Perez* (2018) 19 Cal.App.5th 818, 828; see also *Vivar, supra,* 11 Cal.5th at p. 517.)

On September 30, 2021, the Governor signed Assembly Bill No. 1259 (2021-2022 Reg. Sess.), amending section 1473.7 to expand eligibility for relief such that it now applies to any conviction or sentence, not just a plea of guilty or nolo contendere.[5] This amendment took effect on January 1, 2022.

---

[5] The amended statute now provides that a conviction or sentence is legally invalid due to prejudicial error "damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse

7

Thus, a person who proceeded to trial may now challenge the legal validity of his conviction.  (See *People v. Singh* (2022) 81 Cal.App.5th 147, 152 (*Singh*).)  However, the moving party still must show an error that was "'prejudicial.'"  (*Vivar*, *supra*, 11 Cal.5th at p. 528; *People v. Espinoza* (2023) 14 Cal.5th 311, 319.)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences."  (*Vivar*, *supra*, 11 Cal.5th at p. 529.)  "[A] 'prejudicial error' occurs under section 1473.7 when there is a reasonable probability that the person would not have pleaded guilty—and would have risked going to trial (even if only to figuratively throw a "Hail Mary")—had the person known that the guilty plea would result in mandatory and dire immigration consequences."  (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*); accord, *People v. Camacho* (2019) 32 Cal.App.5th 998, 1011 (*Camacho*).)

As applied to the circumstances here, defendant has the burden of showing that there was a viable alternative to trial that he would have taken if he had been informed of the adverse immigration consequences.  (*Singh*, *supra*, 81 Cal.App.5th at p. 154 [the trial court is "tasked with determining whether defendant can prove by the preponderance of the evidence whether there was a viable alternative [to trial] and that

---

immigration consequences of *a conviction or sentence*."  (§ 1473.7, subd. (a)(1), italics added.)

defendant would have taken that [alternative] fully informed of the immigration consequences"].)

"When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id*. at pp. 529–530; see also *People v. Espinoza*, *supra*, 14 Cal.5th at p. 320.) A defendant is required to corroborate these assertions with objective evidence. (*Vivar*, *supra,* at p. 530; accord, *People v. Soto* (2022) 79 Cal.App.5th 602, 610 (*Soto*).) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*People v. Espinoza*, *supra*, at p. 321.)

We independently review a trial court's order denying a section 1473.7 motion. (*Vivar*, *supra*, 11 Cal.5th at pp. 526–527.) In so doing, we exercise our independent judgment to determine whether the facts satisfy the rule of law, but give deference to factual findings based on the trial court's personal observations of witnesses. (*Id*. at p. 519.)

II. *Analysis*

In the vast majority of cases addressing the sufficiency of an immigration advisement, the criminal defendant has opted to accept a plea and forgo his constitutional right to a jury trial. This case presents the rare situation in which a defendant

9

purportedly rejected a plea offer and opted to roll the dice with a jury trial. Thus, here defendant had to make two showings: (1) that there was a viable immigration-neutral plea deal available, which his attorney either advised him to reject or failed to negotiate, and (2) that immigration consequences were a "paramount concern" in defendant's calculus of whether to accept a plea or proceed to trial. (See *People v. Espinoza, supra*, at p. 322.) He made neither.

A. <u>No evidence of an immigration-neutral alternative to trial or of prejudice</u>

Defendant made no showing of a viable immigration-neutral alternative that he would have accepted if he had been informed of the potential adverse immigration consequences of the charged theft-related offenses. In support of his motion, defendant only included his self-serving declaration stating, "At the plea bargain stage in this case the defendant was offered 3 years probation, no objection to a reduction to a misdemeanor to plead guilty to one count of CPC 487(A)." (Bolding omitted.) He further claimed that defense counsel told him not to accept this plea offer and assured him that he would not be convicted following trial.[6]

---

[6] Two convictions for grand theft would render defendant deportable. (8 U.S.C. § 1227(a)(2)(A)(ii) [a person convicted of two crimes of moral turpitude is deportable]; *Castillo-Cruz v. Holder* (9th Cir. 2009) 581 F.3d 1154, 1160 [grand theft or petty theft is a crime of moral turpitude].) And, if sentenced to imprisonment for at least one year, a single grand theft conviction would also render defendant deportable. (See 8 U.S.C. § 1227(a)(2)(A)(iii) [any alien convicted of an aggravated felony is deportable]; see also 8 U.S.C. § 1101(a)(43)(G) [a theft offense for which the term of imprisonment is at least one year is an

10

Defendant contends that his self-serving declaration constitutes objective evidence showing that the prosecution offered a plea agreement to a single count of grand theft by a preponderance of the evidence. While "a defendant's declaration [may be] one form of objective evidence relevant to a prejudicial error inquiry" (*People v. Espinoza, supra*, 14 Cal.5th at p. 325), the declaration here was inadequate. (*In re Alvernaz* (1992) 2 Cal.4th 924, 938 ["a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims"].)

Defendant's declaration was not filed under penalty of perjury. Moreover, defendant did not offer any corroborating evidence. (*People v. Martinez* (2013) 57 Cal.4th 555, 565 ["It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances"].) Although not required (*People v. Espinoza, supra*, 14 Cal.5th at p. 323), we note that he failed to include any declarations by defense counsel, correspondence with defense counsel, or correspondence with the prosecutor about a plea agreement that included only a single count of grand theft with a sentence of less than one year. He also failed to call defense counsel or the prosecutor to testify about the existence of such a

aggravated felony].) Thus, it appears that a single conviction of grand theft with a sentence of imprisonment of less than a year would be deportation-neutral.

plea offer.  (Contra, *Vivar, supra*, 11 Cal.5th at p. 531 [the record showed and the parties did not dispute that the defendant could have entered a plea that would have avoided mandatory deportation].)  In fact, when questioned by the trial court, defendant admitted that he was never offered a deportation-neutral plea agreement.[7]  His argument instead was that she "could" have negotiated such an agreement.  (*Wise v. DLA Piper LLP (US)* 220 Cal.App.4th 1180, 1188 [speculation is not evidence].)  And he made that argument without any expert support.  (See, e.g., *People v. Espinoza, supra*, 14 Cal.5th at p. 325 [in support of his section 1473.7 motion, the defendant offered a declaration from an immigration attorney that there were alternatives that the prosecution could have offered that would not have resulted in mandatory deportation].)

Moreover, nothing in defendant's 2020 motion corroborates his assertion that immigration consequences were "of paramount concern" when deciding whether to reject the alleged plea offer and proceed to trial.  (*People v. Espinoza, supra*, 14 Cal.5th at p. 325.)  All defendant asserted at that time was that he "would have never agreed to go to trial and risk . . . being thrown out of the country and leaving his daughters and his life savings behind."  (Bolding omitted.)  Certainly defendant was concerned about not wanting to leave his two daughters.  But, his 2020 motion[8] offers no other evidence of his community ties to the

---

[7]    This statement conflicts with the representation in his declaration that he was offered a deal for three years probation, which he rejected upon his attorney's advice.

[8]    The People correctly note in their respondent's brief that defendant did not attach his 2020 motion to his current motion.

12

United States. (Cf. *People v. Espinoza, supra*, at pp. 322–323 [evidence showed that the defendant had lived in California for 23 years; his wife and five children were United States citizens; his parents and siblings lived in the United States; he was the financial provider for his family; and after he accepted the plea deal and served his jail time, he returned home to care for his ailing parents, ran a business to support his family, volunteered, went to church, and participated in numerous community organizations]; *Soto, supra,* 79 Cal.App.5th at p. 611 [the defendant's "biographical history and contemporaneous communications" corroborate that immigration consequences were a paramount concern]; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 771 [the defendant's close ties with the United States was objective corroboration of his assertion that avoiding deportation was a paramount concern]; *Mejia, supra,* 36 Cal.App.5th at p. 872 [same]; *Camacho, supra,* 32 Cal.App.5th at p. 1011 [same].) Thus, defendant failed to corroborate his assertion about the alleged plea offer. (*Vivar, supra,* 11 Cal.5th at p. 530; *Soto, supra,* at p. 610.)

Finally, defendant argues that he established prejudice by showing that he would have "rejected a jury trial" had he known that convictions for theft-related offenses would have adverse immigration consequences. However, defendant could not simply reject going to trial and avoid any consequences. That decision was not his, but the prosecutor's. (See *People v. Birks* (1998)

---

The trial court did not take judicial notice of the 2020 motion, let alone even consider it when it denied the current motion. Because we review the trial court's order de novo, we have considered defendant's 2020 motion in connection with the instant appeal.

19 Cal.4th 108, 134 [prosecuting authorities ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring].)

B. Newly discovered evidence

Defendant contends that newly discovered evidence shows that he is actually innocent of the theft offenses.

In the context of section 1473.7, subdivision (a)(2), the phrase "newly discovered evidence" applies to evidence that is "discovered after trial or judgment, and that with reasonable diligence could not have been discovered earlier." (*People v. Perez* (2020) 47 Cal.App.5th 994, 999, italics omitted.)

Here, as defendant admitted at the hearing, the evidence he claims showed his innocence was discovered prior to his trial. Defendant thus did not put forward any newly discovered evidence.

To the extent defendant is contradictorily arguing that his attorney may not have been aware of this evidence, that contention does not support reversal. There is no evidence or argument that this purportedly new evidence could not have been discovered earlier "with the exercise of due diligence." (§ 1473.7, subd. (c).)

## DISPOSITION

The order denying defendant's motion to vacate his conviction is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.



_____, Acting P. J.
ASHMANN-GERST


We concur:



_____, J.
CHAVEZ



_____, J.
HOFFSTADT